FILED'09 APR 17 1407USDC-ORP

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| STACY KATHLEEN LEWIS, | ) | Civil No. 08-3071-JO |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | OPINION AND ORDER |
| | ) | |
| COMMISSIONER, SOCIAL SECURITY ADMINISTRATION, | ) ) | |
| | ) | |
| Defendant. | ) | |

Philip W. Studenberg
Attorney at Law
200 Pine Street
Klamath Falls, OR 97601

  Attorney for Plaintiff

L. Jamala Edwards
SOCIAL SECURITY ADMINISTRATION
Office of the General Counsel
701 Fifth Avenue
Suite 2900, M/S 901
Seattle, WA 98104

Adrian L. Brown
UNITED STATES ATTORNEY'S OFFICE
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204

JONES, Judge:

Claimant Stacey Lewis seeks judicial review of a final decision of the Commissioner of Social Security denying her application for a period of disability and disability insurance benefits ("DIB").

This court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3). Following a careful review of the record, the court concludes that the Commissioner's decision is supported by substantial evidence, contains no errors of law, and must be affirmed.

## ADMINISTRATIVE HISTORY

Claimant filed an application for DIB on August 13, 2002, alleging an inability to work since October 21, 2001. The application was denied initially and on reconsideration.

Claimant requested a hearing, which ultimately was held before an Administrative Law Judge ("ALJ") on June 6, 2007.[1] Claimant, not represented by counsel, appeared and testified, as did her mother, Susan Curtis, and a vocational expert ("VE"). On August 22, 2007, the ALJ issued a decision denying claimant's application. The ALJ's decision became the final decision of the Commissioner on May 15, 2008, when the Appeals Council declined review.

---

[1] A hearing originally was scheduled for February 7, 2007, but was continued due to difficulty obtaining medical records.

2 - OPINION AND ORDER

STANDARD OF REVIEW

This court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence on the record as a whole. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Tylitzki v. Shalala, 999 F.2d 1411, 1413 (9th Cir. 1993). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld if it is a rational interpretation of the evidence, even if there are other possible rational interpretations. Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989).

SUMMARY OF THE ALJ'S FINDINGS

The ALJ first determined that claimant last met the insured status requirements of the Social Security Act on September 30, 2004. The ALJ then employed a five-step "sequential evaluation" process in evaluating claimant's disability, as required. See 20 C.F.R. § 404.1520.

The ALJ first found that claimant had not been engaged in substantial gainful activity after her alleged onset date of October 21, 2001, through her date last insured of September 30, 2004. Second, the ALJ found that through her date last insured, claimant had severe impairments in the form of "degenerative disc disease of the lumbosacral spine and obesity," but that her impairments, either singly or in combination, did not meet or equal the criteria of any impairment in the Listing of Impairments at 20 C.F.R. Pt. 404, Subpt. P, App. 1. Tr. 20, 24, 25.

In the next step of the evaluation, the ALJ determined that claimant retains the following residual functional capacity:

3 - OPINION AND ORDER

> [T]o perform a limited range of light work. She could lift and carry and push and pull twenty pounds occasionally and ten pounds frequently; stand and/or walk for a total of about three hours in an eight-hour workday; and sit for a total of about six hours in an eight-hour workday. In addition, the claimant needed to avoid repetitious bending, lifting, and twisting from waist to floor level. She was able to perform a competitive work schedule with normal time, attendance, and expectations.

Tr. 25. In making that determination, the ALJ found that claimant's medically determinable impairments could reasonably be expected to produce some of her alleged symptoms, "but that the claimant's statements concerning the intensity, persistence, and limiting effects of some of her symptoms are not fully credited" because "the objective medical evidence does not fully support the severity of some of the claimant's alleged limitations or her assertion of disability during the relevant period." Tr. 27.

The ALJ next determined, based on the VE's testimony, that claimant cannot return to her past relevant work. In the final step of the evaluation, again based on the testimony of the VE, the ALJ found that claimant, a younger individual with at least a high school education and an ability to communicate in English, could perform other jobs that exist in the national economy, such as table worker, hand stuffer, and parking lot cashier. Consequently, the ALJ found that claimant was not disabled at any time through September 30, 2004, the date of last insured, and denied her application for benefits. Tr. 33.

## STATEMENT OF FACTS

The parties are familiar with the medical and other evidence of record. I will not, therefore, repeat the evidence except as necessary to explain my decision.

DISCUSSION

Claimant makes several arguments, all centered on the ALJ's handling of the opinion of her treating physician, Dr. Paul Kaplan. In essence, claimant asserts that the ALJ erred in failing to accord greater weight to Dr. Kaplan's opinion over that of a consultative evaluator, Dr. Steve McIntire. Claimant also asserts that the ALJ erred in failing to find that she meets Listing 1.04 in the Listing of Impairments.

The ALJ is obligated and has sole responsibility to resolve conflicts in medical evidence. Carmickle v. Commissioner, Social Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008); see also Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999). My thorough review of the record in this case reveals that it is rife with conflicting medical evidence and disagreement between the doctors themselves, and even contains direct criticism of Dr. Kaplan's evaluation and treatment.[2] See, e.g., Tr. 283-84; 288; 345-46; 464. In view of those conflicts, the ALJ properly gave specific and legitimate reasons based on substantial evidence to support his decision to credit Dr. McIntire's assessment over that of Dr. Kaplan, a choice the ALJ was entitled to make. Substantial evidence also supports the ALJ's finding that "although there is evidence suggesting radiculopathy at times, the record as a whole does not contain objective medical evidence of nerve root compression, neuro-anatomic distribution of pain, sensory loss in a radicular pattern, motor loss, reflex loss, or positive straight leg raising." Tr. 25. In view of

---

[2] One medical examiner (apparently engaged with respect to claimant's workers' compensation claim), Dr. Stephen Abelow, goes as far as to suggest that "any further 'self-interested referrals' in the form of electromyography on the part of Dr. Kaplan be reported to the California Medical Board." Tr. 346.

5 - OPINION AND ORDER

that finding, the ALJ did not err in determining that claimant's impairments did not meet or equal Listing 1.04, which requires proof of the following:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
>
> or
>
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
>
> or
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.[3]

20 C.F.R. Pt. 404, Subpt. P, Appendix 1, Listing of Impairments 1.04.

As the Commissioner points out, claimant's argument cites the rules and regulations governing an ALJ's evaluation of medical evidence, but she does not point to specific medical evidence that the ALJ either overlooked or was obligated to credit that would establish that her impairments meet or are equivalent to the findings necessary for Listing 1.04. The ALJ thus did not err in concluding that she did not meet the listing.

---

[3] The ALJ correctly found that the record does not show "an inability to ambulate effectively as defined in Section 1.00 [of the Listing of Impairments]." Tr. 25.

6 - OPINION AND ORDER

Beyond her arguments concerning Dr. Kaplan and Listing 1.04, claimant has not challenged the ALJ's assessment of her residual functional capacity, nor has she challenged the VE's testimony concerning the availability of other jobs she could perform in the national economy.[4] Consequently, I affirm the Commissioner's decision.

## CONCLUSION

Based upon a review of the record, I conclude that the Commissioner's decision is supported by substantial evidence, contains no errors of law, and is, therefore, AFFIRMED.

DATED this 17 day of April, 2009.

_____
ROBERT E. JONES
U.S. District Judge

---

[4] Claimant also asserts that the ALJ erred by failing to re-contact Dr. Kaplan, but again cites only the regulations without any explanation of how or why this argument affects her case. I therefore decline to reach this argument.

7 - OPINION AND ORDER